**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CEDRIC REID, 00A6988,**

                                    **Plaintiff,**                    08-CV-0870A(Sr)

**v.**

**JOHN H. NUTTALL, et al.,**

                                    **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #11.

Currently before the Court are defendants' motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. ## 10 and 14. Plaintiff, proceeding *pro se*, commenced this action on or about December 1, 2008 against twenty-nine defendants. At the direction of the Court, summonses were issued as to each of the named defendants. Dkt. #2. Thereafter, the following twenty-four defendants appeared and filed a motion to dismiss the complaint on or about May 12, 2009: John Nuttall; Washburn; Bezio; Justin Taylor; Robert Price; Alan Taylor; James DeMarco; Michael Leone; Richard Stiles; Steven Bateman; Howard Hooper; Mary Leonard; Michael Sheahan; Andre Jacot; Patricia LeConey; Paul Corcoran; Ronald Geddis; LT Quinn; LT Head; Gamba; Mogavero; Ryerson; Wolczyk; and, Graham. Dkt. #10. As

counsel for the above-enumerated twenty-four defendants stated in defendants' motion to dismiss, at that time, five defendants named in plaintiff's complaint, defendants, M. Chindamo, D. Sullivan, David Stallone, Robert Davia and Denise Sarra, had yet to be served with a summons and complaint. Dkt. #10-2, p.1, n.1. On May 20, 2009, defendant Chindamo filed an acknowledgment of service and joined in the motion to dismiss previously filed by co-defendants.[1] Dkt. #14. In response to the motions to dismiss, plaintiff filed an affirmation which does not substantively respond to defendants' motion to dismiss, rather, plaintiff's affirmation requests that he be transferred to a Special Housing Unit within a facility other than Southport Correctional Facility ("Southport"). Dkt. #20. Plaintiff also filed a memorandum of law in response to defendants' motions to dismiss. Dkt. #22. As a threshold matter, the Court notes that none of the defendants have sought to sever and transfer any portion of this action to the Northern District of New York on the basis of venue. However, for the following

---

[1] According to counsel for the defendants who have appeared in this action, defendants Stallone, Davia, Sullivan and Sarra have neither been served with a summons and complaint nor appeared in this action. The Court notes that on July 29, 2009, United States District Judge Richard J. Arcara entered an Order requesting the New York State Attorney General's Office to ascertain the addresses at which defendants D. Sullivan, David Stallone, Robert Davia and Denise Sarra can be served and to advise the Court of said addresses within 30 days of receipt of the Order. Dkt. #23. Thereafter, in a response received on August 12, 2009 from Assistant Attorney General David State, AAG State advised that defendant David Stallone can be served at the Auburn Correctional Facility and defendant Denise Sarra can be served at the New York State Department of Correctional Services, Counsel's Office in Albany, New York. In a further response August 20, 2009 from AAG State, the last known addresses for defendants D. Sullivan and Robert Davia were also provided to the Court. The Court has directed that the Clerk of Court for the Western District of New York issue a summons and complaint to defendant D. Sullivan at the last known address provided by AAG State. As discussed below, service of a summons and complaint on defendants Sarra, Stallone and Davia will be left to the Northern District of New York.

reasons, this Court recommends that the United States District Judge to whom this case is assigned, exercise his discretion and sever the claims against defendants, Norman R. Bezio, J. Wolczyk, H.D. Graham, David Stallone, T. Quinn, Head, M. Chindamo, Robert Davia, Denise B. Sarra, N. Ryerson, T.J. Gamba, M. Mogavero, Justin A. Taylor, P. LeConey, R. Pirie, A. Taylor, M. Leone, DeMarco, A. Jacot, R. Stiles, H. Hooper, R. Geddis, S. Bateman and M. Leonard, pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and transfer those claims to the Northern District of New York pursuant to 28 U.S.C. §§ 1391 and 1404. Based on the foregoing, it is therefore further recommended that defendants', Norman R. Bezio, J. Wolczyk, H.D. Graham, David Stallone, T. Quinn, Head, M. Chindamo, Robert Davia, Denise B. Sarra, N. Ryerson, T.J. Gamba, M. Mogavero, Justin A. Taylor, P. LeConey, R. Pirie, A. Taylor, M. Leone, DeMarco, A. Jacot, R. Stiles, H. Hooper, R. Geddis, S. Bateman and M. Leonard, motions to dismiss be denied as moot. It is further recommended that the remaining defendants', John H. Nuttall, P. Corcoran, M. Sheahan and Kathy Washburn, motion to dismiss (Dkt. #10) plaintiff's claims that arose in the Western District of New York be granted, subject to certain conditions enumerated below.


## FACTUAL BACKGROUND

Plaintiff commenced this *pro se* action on or about December 1, 2008 against twenty-nine defendants pursuant to 42 U.S.C. § 1983. Dkt. #1. As alleged in the complaint, each of the twenty-nine named defendants were sued in their individual and official capacities. *Id*. As noted above, twenty-five of the twenty-nine named

defendants have been served and appeared and now seek dismissal of the complaint. Dkt. ##10 and 14.

For purposes of this Report, Recommendation and Order, the Court will treat plaintiff's complaint as being divided into two sections, first, retaliatory actions relating to seven misbehavior reports and second, "conditions of confinement." Specifically, plaintiff's complaint summarizes the events surrounding seven misbehavior reports[2] issued to plaintiff while he was housed at the Southport, Auburn and Gouverneur Correctional Facilities. Dkt. #1, pp.6-22. As will be discussed in greater detail below, plaintiff's claims relating to conduct that took place while he was housed at the Auburn Correctional Facility ("Auburn") and the Gouverneur Correctional Facility ("Gouverneur") are deemed to arise under the jurisdiction of the United States District Court for the Northern District of New York. Plaintiff next complains of the "conditions of confinement" alleging that: he was improperly removed from a program (Auburn); he

---

[2] The Court notes that the first Misbehavior Report addressed by plaintiff in his complaint relates to an incident that occurred on April 12, 2006. Neither the author of the Misbehavior Report, D. McIntosh, nor the hearing officer who conducted the disciplinary hearing, Lieutenant Donahue, have been named as defendants in this matter. The only individual associated with the first Misbehavior Report who has been named as a defendant is D. Sullivan. Plaintiff alleges that defendant D. Sullivan affirmed the hearing officer's determination despite "overwhelming appealable issues raised by the plaintiff." Dkt. #1, p.7. Defendant Sullivan has neither been served with the summons and complaint nor appeared in this matter. Dkt. #10-2, p.1, n.1. As noted in footnote 1, the Court has ordered the Clerk of Court for the Western District of New York to issue a summons and complaint to defendant D. Sullivan at the last known address provided by AAG State. With respect to third Misbehavior Report, plaintiff alleges that defendant Sarra authored the Misbehavior Report after he filed a complaint about an adult basic education teacher. *Id*. at pp.9-12. As with defendant Sullivan, defendant Sarra has neither been served with the summons and complaint nor appeared in this matter. Dkt. #10-2, p.1, n.1.

was not provided with a cold weather cap (Auburn and Gouverneur); there was interference with his legal mail (Southport) (denial of access to the court); he was not provided with a fan (Auburn); and, he was exposed to paint fumes (Southport).  Dkt. #1, pp.23-36.  As noted above, plaintiff's conditions of confinement claims arising from incidents that occurred while he was housed at the Auburn and Gouverneur Correctional Facilities are deemed to arise under the jurisdiction of the United States District Court for the Northern District of New York.

**Plaintiff's Allegations**

**John H. Nuttall**

Defendant John Nuttall is named in plaintiff's complaint in connection with plaintiff's claims of a violation of his access to the courts.  Specifically, plaintiff claims that on or about February 9, 2006, he wrote to then-Commissioner Goord concerning DOCS' Directive 4422, limiting inmates' incoming mail so as not to exceed five pages.  Plaintiff claims that defendant Nuttall signed the mail directive and thereafter admitted that the directive was a form of "volume control" improperly limiting incoming correspondence to inmates.  Dkt. #1, p.25.  Plaintiff alleges that defendant Nuttall is employed as the Deputy Commissioner of Program Services of the New York Department of Correctional Services.  Dkt. #1, p.1.  Other than signing the directive, plaintiff fails to allege any wrongdoing on the part of defendant Nuttall.

**Norman R. Bezio**

As against defendant Norman Bezio, plaintiff alleges that on or about April 10, 2008 he was notified that defendant Bezio had modified a Tier III disciplinary hearing determination. The hearing determination at issue with respect to defendant Bezio related to the "Seventh Misbehavior Report" concerning an incident that occurred at Gouverneur. Plaintiff alleges that defendant Bezio is the Director of Special Housing/Inmate Disciplinary Programs for the New York Department of Correctional Services. Dkt. #1, p.1. There are no other allegations against defendant Bezio in the complaint.

**P. Corcoran**

Plaintiff alleges that his December 5, 2005 complaint initially directed to Superintendent McGinnis concerning the withholding of certain mail from the Better Business Bureau because it exceeded five pages was referred to defendant P. Corcoran, the "Acting Deputy Superintendent for Programs Services" at Southport. Dkt. #1, p.24. Plaintiff alleges that defendant P. Corcoran responded to plaintiff's complaint on December 22, 2005 wherein defendant P. Corcoran denied plaintiff's request for the information. *Id*. With the exception of the foregoing, there are no other allegations against defendant Corcoran in plaintiff's complaint.

**M. Sheahan**

Plaintiff alleges that on or about January 17, 2006, following a Tier III disciplinary hearing wherein he was found guilty, he was moved from B-Block 2 Company 10 Cell to B-Block 1 Company 13 Cell. Dkt. #1, p.26. Plaintiff further alleges that 1 Company had just been painted and that "the paint fumes on 1 Company were so high/strong that they would bring tears to the eyes." *Id*. With respect to defendant Sheahan, plaintiff alleges that defendant Sheahan was "made aware of the paint fumes on B1" on or about January 18, 2006. Dkt. #1, p.26.

In a separate incident, plaintiff alleges that on or about February 1, 2006, defendant Sheahan,

> had the plaintiff placed in D-Block's C Section 28 Cell ("D-C/28") at SHU, which was a Progressive Inmate Movement System ("PIMS") level 1 unit, ... [and] had the plaintiff to [sic] remain at the level 1 for a total of 38 (thirty-eight) days, which was 8 (eight) days beyond the required 30 (thirty) day requirement in accord with Southport's PIMS, for level 1's [sic]. The plaintiff was eligible for a PIMS level 2 move effective February 16th (due to the fact that he was [not] under any sort of deprivation, restraint and/or cell-shield order). Defendant Sheahan had the plaintiff's entitled privileges under PIMS for level 2, withheld, where Reid was subjected to PIMS level 1, from January 17th through February 24, 2006.

Dkt. #1, p.27. Plaintiff then states in conclusory fashion that he was "treated differently from other inmates similarly-situated at Southport ..." Dkt. #1, p.28. At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Sheahan was a Captain at Southport.

**Kathy Washburn**

As against defendant Kathy Washburn, plaintiff alleges that on or about November 30, 2005, he received a Notice from Southport's Correspondence Unit that contraband had been received in the mail, in excess of five pages, from the Better Business Bureau and that the mail was being withheld. Dkt. #1, p.23. Moreover, plaintiff states,.

> [t]he plaintiff was sent [information] of a legal concern from the BBB, which is not recognized by DOCS as "Privileged Correspondence" i.e., Governmental/Public Officials Legal/Services, nor Medical Services Incoming or Outgoing, in regards to the Small Claims and Conciliation Branch procedures of the Superior Court of the District of Columbia's website, to all which the plaintiff was not permitted to receive, due to it being in excess of 5 pages.

Dkt. #1, p.23. Plaintiff further alleges that on or about December 12, 2005, plaintiff wrote to Southport's Sr. Mail & Supply Clerk and informed her "of the urgent need for the information which was in excess of 5 pages." *Id*. Plaintiff alleges that defendant Washburn denied his request for the information. *Id*.

Thereafter, plaintiff claims that on or about January 3, 2006, he wrote to the "Sr. Mail & Supply Clerk" (who he previously identified as Kathy Washburn) concerning his attempt to mail out material to his appellate attorney that was considered to be contraband because it exceeded five pages. *Id*. at p.24. Plaintiff further alleges that the material was destroyed in violation of plaintiff's Constitutional rights. *Id*. Plaintiff alleges that defendant Washburn was employed as the Senior Mail and Supply Clerk at Southport. Dkt. #1, p.2.

**J. Wolczyk**

Plaintiff alleges that at all times relevant to the allegations in the complaint, defendant J. Wolczyk was a "Commissioner's Hearing Officer at the Auburn Correctional Facility." Dkt. #1, p.2. Plaintiff alleges that defendant Wolczyk served as the hearing officer at an April 9, 2007 Tier III disciplinary hearing, wherein the plaintiff was found guilty of some charges and not guilty of others. Dkt. #1, pp.13-14. Defendant Wolczyk imposed the following penalty, six months SHU, with a loss of all privileges, plus a recommended loss of six months good time. *Id*. at p.14. Plaintiff alleges that on July 6, 2007, "the administrative decision was **Reversed** by Keith Dubray ("Dubray"), Acting Director, Special Housing/Inmate Disciplinary Program." Dkt. #1, p.14 (emphasis in original).

**H.D. Graham**

Plaintiff alleges that defendant H.D. Graham was the Superintendent at Auburn in or about June-July 2006. Dkt. #1, pp.7-8. Specifically, plaintiff alleges that he arrived at Auburn on or about June 26, 2006 and that during the week of July 17, 2006, plaintiff "made a written complaint to Auburn's Superintendent, whom the plaintiff later came to find out was H.D. Graham ..."[3] *Id*. at p.7.

---

[3] Although the complaint does not describe the nature of the complaint plaintiff made to the Superintendent of Auburn, elsewhere in the complaint plaintiff alleges that on July 21, 2006, that he was interviewed by an unidentified Corrections Officer concerning the fact that he claimed he had not received his identification card following his arrival at Auburn. Dkt. #1, pp.7-8. Thereafter, plaintiff alleges that he submitted a grievance concerning the identification card and because of the grievance, he was issued a Misbehavior Report.

In addition to the foregoing, plaintiff alleges that he received a response to his appeal from a Tier II disciplinary hearing from defendant Graham affirming a January 23, 2007 determination. Dkt. #1, p.11. Plaintiff further alleges that while housed in Auburn's Special Housing Unit, he wrote to defendant Graham between April 18-23, 2007 and requested a "Discretionary Review by Superintendent." Dkt. #1, p.13. According to plaintiff, defendant Graham responded on or about April 24, 2007 by modifying plaintiff's penalties, including a new SHU release date of May 4, 2007, and removal of the recommended loss of good time. *Id*. Finally, plaintiff alleges that defendant Graham was "aware of the then-recently enacted policy in confiscating inmates watchcaps without providing notice to those transported ..." *Id*. at p.33.

**T. Quinn**

Plaintiff alleges that at all times relevant to the allegations in plaintiff's complaint, defendant T. Quinn was a Lieutenant at Auburn. Plaintiff complains that "T. Quinn" authored a Misbehavior Report on or about April 4, 2007 and summarily claims that the Misbehavior Report was as a direct result of a grievance plaintiff filed on or about March 28, 2007 against three employees at the Auburn Correctional Facility. Dkt. #1, p.12. The allegations against defendant Quinn are set forth in a section titled "Fourth Misbehavior Report." In that section, plaintiff describes that the Misbehavior Report authored by defendant Quinn contained excerpts from his March 28, 2007 grievance as grounds for the disciplinary action. *Id*. The Misbehavior Report charged plaintiff with the following violations, stalking and harassment which plaintiff claims

"were based on the written contents of the 'speech,' used in the grievance, which resulted in a tier 3 (Supt's Hearing)." *Id*. With the exception of the foregoing allegations, the complaint does not allege any additional wrongdoing on the part of defendant T. Quinn. At the conclusion of Tier III disciplinary hearing, for which defendant Wolczyk served as the hearing officer, plaintiff was found guilty of harassment and not guilty of stalking. *Id*. at p.13. Thereafter, plaintiff claims that he exhausted his administrative remedies. *Id*. at p.14.

**Head**

Plaintiff alleges that at all times relevant to the allegations in the complaint, defendant Head was a Lieutenant at Auburn. Dkt. #1, p.1. The only allegation against defendant Head is that on or about August 1, 2006, defendant Head, as the designated hearing officer presiding over a Tier II disciplinary hearing, dismissed the charges against plaintiff. However, plaintiff alleges that defendant Head "withheld from the plaintiff the disposition sheets of the evidence relied upon, irregardless [sic] of dismissing the charges." Dkt. #1, p.8. The Court notes that the alleged author of the Misbehavior Report that lead to the August 1, 2006 disciplinary hearing was defendant Robert Davia. Although Robert Davia was named as a defendant, he has not been served with a copy of the summons and complaint. Dkt. #10-2, p.1, n.1.

**M. Chindamo**

At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant M. Chindamo was employed as a Corrections Officer at Auburn. Dkt. #1, p.1.  In support of his motion to dismiss, defendant Chindamo argues that he is only mentioned twice in the complaint, first with respect to his employment as a Corrections Officer and second, that he conspired with defendant Sarra to remove plaintiff from Room #10 where an adult basic education course was being taught.  Dkt. #1, p.11.  The allegation against defendant Chindamo relates to the section in plaintiff's complaint titled, "Third Misbehavior Report."  In that section, plaintiff alleges that on January 16, 2007, he sent a one page letter to Denise Sarra the "Education Supervisor" at Auburn complaining about Ms. Monette, a teacher in adult basic education Room #10.  Dkt. #1, p.9.  Specifically, plaintiff complained that "Ms. Monette ... was making a loud popping sound from chewing gum while the class is in session, which the plaintiff found to be very disturbing, as well as rude, coming from a person that was being considered to be a professional."  *Id*.

Thereafter, plaintiff alleges that he received a response from defendant Sarra and later, defendant Sarra had a conversation with plaintiff about his complaints. *Id*. at p.10.  Following his conversation with defendant Sarra, plaintiff alleges that he received a Misbehavior Report authored by defendant Sarra charging plaintiff with violating a direct order and interference with an employee.  *Id*.  With respect to defendant Chindamo, plaintiff's complaint states,

> [t]o the plaintiff's surprise defendant Sarra was not alone although the plaintiff's copy of the M-R [Misbehavior Report] is absent any endorsement of a co-employee's [sic] whom witnessed Sarra's allegations, Sarra's sudden co-defendant's name is M. Chindamo ("Chindamo"), C.O., whom conspired along with def. Sarra in a belated attempt to justify removing Reid from room #10, the plaintiff was not immediately placed under cell confinement despite the alleged incident time i.e., approximately 8:45 a.m., the plaintiff recalls being released from room #15 unescorted, the plaintiff also recalls going to noon (lunch) meal and signing for his Cold Alternative Diet ("CAD"), from the Mess Hall.

Dkt. #1, p.11. Except for the foregoing, there are no other allegations in plaintiff's complaint about defendant Chindamo.


## N. Ryerson

As against defendant Ryerson, plaintiff attempts to allege an Americans with Disabilities Act claim claiming that he was not provided with a fan and that he had communicated his second hand smoke concerns to defendant Ryerson on or about December 14, 2006. Dkt. #1, p.30. Plaintiff further alleges that defendant Ryerson's response was "incompetent or a total disregard to the issues that were relayed to her...". *Id*. According to plaintiff, at all times relevant to the allegations in plaintiff's complaint, defendant Ryerson was employed as a Nurse Administrator at Auburn. Dkt. #1, p.2.

**T.J. Gamba**

At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Gamba was employed as a Vocational Supervisor at Auburn. Dkt. #1, p.2. Plaintiff alleges that in October 2006 he verbally complained to defendant Gamba about the conditions in his welding program, *to wit*: "black soot was visable [sic] to the naked eye, poor ventilation and ... Instructor/teacher was smoking tobacco products i.e. Cigarettes, in shop class." Dkt. #1, p.30. Thereafter, plaintiff alleges that in retaliation for his complaint, on or about October 23, 2006, defendant Gamba removed plaintiff from the welding program. *Id*.

**M. Mogavero**

Plaintiff's allegations against defendant Mogavero are identical to those alleged against defendant Gamba except insofar as plaintiff further alleges that defendant Mogavero refused to reassign plaintiff to any vocational program. *Id*. In addition, plaintiff alleges that defendant Mogavero was employed as a Program Committee Chairperson at Auburn. Dkt. #1, p.2.

**Justin A. Taylor**

As against defendant Justin A. Taylor, then Superintendent at Gouverneur, plaintiff alleges that on or about February 6, 2008, defendant Taylor agreed with the IGRC in its denial of plaintiff's appeal of a Tier I disciplinary hearing disposition. Dkt. #1, p.16. In addition, plaintiff alleges that defendant Taylor conspired

with others with respect to plaintiff's "desire to 'sign-out' of academic programming, which is clearly permissible in accordance with DOCS form #3617 (Program Refusal Notification), which is of the inmate's choice, however, in a conspiracy by the above mentioned defendants to rather have the plaintiff receive disciplinary actions..."  Dkt. #1, p.18.  Finally, plaintiff alleges that defendant Taylor was aware of the policy to confiscate inmate "watchcaps" and that defendant Taylor did not permit new inmates arriving at Gouverneur to purchase "watchcaps."  Dkt. #1, p.33.

### P. LeConey

Plaintiff alleges that on or about December 19, 2007, defendant LeConey was grossly negligent in that he failed to disclose information concerning a change in plaintiff's behavior such that plaintiff was "placed under mental observation" and thereafter, plaintiff was transferred to Clinton Correctional Facility where plaintiff was considered to be "a danger to self or others."  Dkt. #1, p.17.  At all times relevant to the allegations in plaintiff's complaint, defendant LeConey was employed as the Deputy Superintendent of Security at Gouverneur.  Dkt. #1, pp.2-3.  With the exception of the foregoing allegations, plaintiff does not allege any other wrongdoing on the part of defendant LeConey.

### R. Pirie

Similar to defendant Justin Taylor, plaintiff alleges that defendant Pirie was involved in a conspiracy concerning plaintiff's desire to "sign-out" of academic

programming.  Dkt. #1, p.18.  At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Pirie was employed as the Deputy Superintendent of Program Services at Gouverneur Correctional Facility.

## A. Taylor

Plaintiff alleges that defendant A. Taylor was employed as a Captain at Gouverneur.  Dkt. #1, p.3.  As against defendant A. Taylor, plaintiff alleges that he affirmed a January 17, 2008 Tier II disciplinary hearing determination and further that defendant Taylor "stated no opinion but merely rubber stamped the appeal without review of reversible issues in which the plaintiff may of [sic] raised."  Dkt. #1, p.19.  In addition, plaintiff alleges that defendant Taylor was involved in a "conspiracy to have harm caused to the plaintiff, to not only have him arrested, even indicted for 'assault on staff,' plus transferred (removed) from Gouverneur in retaliation for his complaints of the 'conditions of confinement' ...."  Dkt. #1, p.21.

## M. Leone

Plaintiff alleges that defendant M. Leone was a Sergeant at Gouverneur and was involved in the same conspiracy described above against defendant A. Taylor to harm the plaintiff.  In addition, plaintiff alleges that defendant M. Leone wrote the plaintiff a Misbehavior Report on January 31, 2008 concerning a January 30, 2008 incident wherein plaintiff was to be interviewed by defendant Leone concerning complaints sent to DOCS' Central Office and other officials and plaintiff "declined the

interview outside of his cell in fear that injury might result from 'un-necessary use of force,' in an effort to have the plaintiff removed from Gouverneur." Dkt. #1, p.20.

**DeMarco**

Under the heading Fifth Misbehavior Report, plaintiff alleges that on or about December 26, 2007, he submitted a grievance complaining about the living conditions at Gouverneur outside of the B-1 dormitory. Dkt. #1, p.15. Specifically, plaintiff alleges that defendant DeMarco was employed as a Sergeant at Gouverneur and "overlooked, ignored and disregarded" the conditions. *Id*. Thereafter, plaintiff asserts that on or about January 2, 2008, defendant DeMarco conspired with defendant Jacot to have plaintiff disciplined by reason of a false Misbehavior Report and in retaliation for his complaint. *Id*. Plaintiff alleges that defendant DeMarco was the hearing officer who handled a Tier I disciplinary hearing held on January 3, 2008 (for the January 2, 2008 Misbehavior Report) and at the conclusion of the hearing, found plaintiff guilty and imposed a penalty of 7 days loss of recreation. *Id*. Finally, plaintiff claims that he submitted an appeal but it was rejected because it was submitted on an "unofficial appeal form" and his subsequent appeal was untimely, but the determination was nevertheless affirmed. *Id*. at pp.15-16.

**A. Jacot**

At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Jacot was employed as a Correctional Officer at Gouverneur.

Dkt. #1, p.3. As noted above, plaintiff alleges that defendant Jacot conspired with defendant DeMarco to have the plaintiff disciplined on a false Misbehavior Report in retaliation for plaintiff's complaint about the living conditions at the Gouverneur. Dkt. #1, p.15.

**R. Stiles**

Plaintiff alleges that on or about December 19, 2007, defendant Stiles, along with defendants LeConey, Bateman, and Hooper, was grossly negligent in that he failed to disclose information concerning a change in plaintiff's behavior such that plaintiff was "placed under mental observation" and thereafter, plaintiff was transferred to Clinton Correctional Facility where plaintiff was considered to be "a danger to self or others." Dkt. #1, p.17. In addition, plaintiff alleges that defendant Stiles was employed as a Senior Correctional Counselor at Gouverneur. Dkt. #1, p.3. With the exception of the foregoing allegations, plaintiff does not allege any other wrongdoing on the part of defendant Stiles.

**H. Hooper**

As discussed above, plaintiff alleges that defendant Hooper, together with defendants LeConey, Bateman and Stiles, was also grossly negligent in failing to disclose information concerning plaintiff's behavior such that plaintiff was "placed under mental observation" and thereafter, plaintiff was transferred to Clinton Correctional Facility where plaintiff was considered to be "a danger to self or others." Dkt. #1, p.17.

In addition, plaintiff alleges that defendant Hooper was part of a conspiracy with defendants Justin Taylor, Pirie, Geddis and Leonard concerning plaintiff's "desire to 'sign-out' of academic programming. Dkt. #1, p.18. At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Hooper was employed as a Correctional Counselor at Gouverneur. Dkt. #1, p.3.

**R. Geddis**

As against defendant Geddis, plaintiff alleges that defendant Geddis was employed as an Educational Supervisor at Gouverneur. Dkt. #1, p.3. In addition to the allegations that defendant Geddis conspired with defendants Justin Taylor, Pirie, Leonard and Hooper concerning plaintiff's "desire to 'sign-out' of academic programming, plaintiff further alleges that defendant Geddis served as the hearing officer for a Tier III disciplinary hearing held on February 6, 2008 and that defendant Geddis interviewed defendant Leonard concerning a grievance filed by plaintiff about defendant Leonard. Specifically, plaintiff alleges that defendant Geddis served as the hearing officer for a Tier III disciplinary hearing that began on February 6, 2008 and concluded on February 7, 2008 wherein plaintiff was found guilty and as alleged by plaintiff, "a stiff penalty was imposed on plaintiff by defendant Geddis, whom among other things was bias [sic] towards the plaintiff." Dkt. #1, p.21. Moreover, plaintiff further alleges that in retaliation for a grievance plaintiff filed against defendant Leonard, defendant Geddis interviewed defendant Leonard about the grievance and thereafter, defendant Leonard falsified a Misbehavior Report on or about January 14,

2008 and immediately thereafter, plaintiff was sent to the Special Housing Unit.  Dkt. #1, p.17.

### S. Bateman

Plaintiff alleges that on or about December 19, 2007, defendant Bateman, along with defendants LeConey, Stiles, and Hooper, were grossly negligent in that they failed to disclose information concerning a change in plaintiff's behavior such that plaintiff was "placed under mental observation" and thereafter, plaintiff was transferred to Clinton Correctional Facility where plaintiff was considered to be "a danger to self or others."  Dkt. #1, p.17.  In addition, plaintiff alleges that defendant Bateman was aware of plaintiff's arthritis and notwithstanding her awareness of plaintiff's condition "forced [plaintiff] to attend school (academic program) despite his recorded medical condition without relating any information to the Guidance and Counseling Unit ..."  Dkt. #1, p.18. At all times relevant to the allegations in plaintiff's complaint, plaintiff alleges that defendant Bateman was employed as a Nurse Administrator at Gouverneur.  Dkt. #1, p.3.

### M. Leonard

Plaintiff alleges that defendant Leonard was employed as "Teacher IV" at Gouverneur.  Dkt. #1, p.3.  As described above, plaintiff filed a grievance against defendant Leonard and plaintiff alleges that in retaliation for that grievance, defendant Leonard "wasted no time in getting even (revenge) at plaintiff, where within two (2)

hours of entering his ABE-5 class on 1/14/08 (a Monday morning), Reid was in SHU

getting processed." Dkt. #1, p.17. Specifically, plaintiff alleges that defendant Leonard

("or perhaps someone else") falsified a Misbehavior Report in relation to the grievance

filed by plaintiff. *Id*. Plaintiff claims that his grievance against defendant Leonard was a

serious issue, about which she was interviewed by defendant Geddis on January 11,

2008. *Id*.

        In addition, plaintiff alleges that defendant Leonard was part of a

conspiracy with defendants Justin Taylor, Pirie, Geddis and Hooper concerning

plaintiff's "desire to 'sign-out' of academic programming. Dkt. #1, p.18. Finally, plaintiff

alleges that defendant Leonard may have authored a Misbehavior Report on or about

January 15, 2008 accusing plaintiff of four violations, creating a disturbance,

harassment, refusing a direct order and threats. Dkt. #1, p.19.

## **DISCUSSION AND ANALYSIS**

### **Sever and Transfer**

        Rule 20 of the Federal Rules of Civil Procedure provides that:

Persons . . . may be joined in one action as defendants if:

(A)    any right to relief is asserted against them
jointly, severally, or in the alternative with
respect to or arising out of the same
transaction, occurrence, or series of
transactions or occurrences; and

(B)    any question of law or fact common to all
defendants will arise in the action.

Rule 21 of the Federal Rules of Civil Procedure provides that

> Misjoinder of parties is not a ground for dismissing an action.
> On motion or on its own, the court may at any time, on just
> terms, add or drop a party. The court may also sever any
> claim against a party.

"The decision whether to sever a party or claim from an action is within the broad

discretion of the district court." *German v. Federal Home Loan Mortgage Corp.*, 896 F.

Supp. 1385, 1400 (S.D.N.Y. 1995). In deciding whether severance is appropriate,

courts generally consider: (1) whether the issues sought to be tried separately are

significantly different from one another; (2) whether the severable issues require the

testimony of different witnesses and different documentary proof; (3) whether the party

opposing the severance will be prejudiced if it is granted; and (4) whether the party

requesting the severance will be prejudiced if it is not granted. *Id.*


28 U.S.C. § 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest
> of justice, a district court may transfer any civil action to any
> other district or division where it may have been brought.

28 U.S.C. § 1391(b) provides that

> A civil action wherein jurisdiction is not founded solely on
> diversity of citizenship may, except as otherwise provided by
> law, be brought only in (1) a judicial district where any
> defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is
> situated, or (3) a judicial district in which any defendant may
> be found, if there is no district in which the action may
> otherwise be brought.

"For venue purposes, public officials reside in the district in which they perform their official duties."  *Pierce v. Coughlin*, 806 F. Supp. 426, 427 (S.D.N.Y. 1992).  Auburn is located in Cayuga County and Gouverneur is located in St. Lawrence County, which are in the Northern District of New York.  28 U.S.C. § 112(a).

Applying these considerations to the instant case, the Court recommends that plaintiff's allegations pertaining to Auburn and Gouverneur should be severed and transferred to the Northern District of New York.  *See Peterson v. Scully*, No. 86 Civ. 234, 1987 WL 11564 (S.D.N.Y. May 21, 1987) ("court may determine that, in the interest of justice, an action against multiple defendants should be severed and certain claims transferred to a more convenient forum.").  Although the claims pertaining to Southport, Auburn and Gouverneur are either retaliation claims or conditions of confinement claims, the allegations involve different defendants at different correctional facilities.  The witnesses and documentary proof will be different as to each claim and against each defendant.

As noted above, plaintiff's claims of retaliation relate to seven separate misbehavior reports.  The only misbehavior report that relates in any way to conduct that took place in the Western District of New York, is the first misbehavior report.  However, as noted in footnote 2 above, the only individual identified in connection with the first misbehavior report who is also named as a defendant is defendant D. Sullivan, who as defendants' counsel advised has neither been served with a summons and complaint nor appeared in the action.  The Court notes, however, that the Clerk of

Court did send a summons and complaint to defendant D. Sullivan at the last known address provided by Assistant Attorney General David State. *See* WDNY Docket Sheet. Plaintiff's allegations relating to the second, third, and fourth misbehavior reports all arise from conduct that allegedly took place at Auburn. Dkt. #1, pp.7-14. Similarly, plaintiff's allegations set forth under the headings fifth, sixth and seventh misbehavior reports all arise from conduct that allegedly took place at Gouverneur. Dkt. #1, pp.15-22.

With respect to plaintiff's claims concerning the conditions of his confinement, plaintiff claims that there was interference with his mail at Southport and that he was exposed to noxious paint fumes at Southport. Plaintiff's other claims concerning the conditions of his confinement relate to Auburn and Gouverneur, such that plaintiff complains that he was not given a fan at Auburn, he was improperly removed from a program and was left unassigned at Auburn and he was not provided with a cold weather cap at either Auburn or Gouverneur.

In addition to the fact that the events giving rise to certain of plaintiff's claims clearly took place at Auburn and/or Gouverneur, the Court is sensitive to the burden, upon both the individuals and the taxpayers of New York, of requiring individuals who reside in the Northern District of New York to travel to the Western District of New York to defend against allegations which occurred in the Northern District of New York. Accordingly, it is recommended that plaintiff's allegations with respect to the Auburn and Gouverneur defendants be severed and transferred to the

Northern District of New York.  Accordingly, by reason of this Court's recommendation

to sever and transfer certain claims to the Northern District of New York, this Court

further recommends that the Auburn and Gouverneur defendants' motions to dismiss

be denied as moot.  As set forth above, the Court notes that defendants, Robert Davia,

David Stallone and Denise Sarra, have not been served with a summons and complaint

and that addresses for service for defendants Stallone and Sarra were provided to the

Court and a last known address for defendant Davia was also provided to the Court,

and all three addresses are contained on the Western District of New York Docket

Sheet.  The Western District of New York will leave the matter of service of the

summons and complaint on the three remaining defendants, Stallone, Sarra and Davia,

to the Northern District of New York following the transfer of those claims.


**<u>Dismissal Standard</u>**

The United States Supreme Court recently revisited the standard of

review on a motion to dismiss and concluded that,

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a
> cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level
> on the assumption that all the allegations in the complaint
> are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929, 940 (2007) (internal

citations omitted).  In setting forth this standard, the Supreme Court disavowed an often

quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 943, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that,

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* at 943. The Supreme Court decried that,

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case ...

*Id.* at 944 (internal citations omitted). The Supreme Court then limited *Conley* to describing "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 945. The Supreme Court reiterated that it did "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on it face."  *Id.* at 949.

The Court of Appeals for the Second Circuit recognized that *Bell Atlantic Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings."  *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has concluded that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  *Id.* at 157-58.

## Evidentiary Standard

When ruling on a motion to dismiss, the court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendants.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).  However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.  *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied*, 410 U.S. 944 (1973).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to

facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL 839415 (W.D.N.Y. March 27, 2006).

**Denial of Access to the Courts Claim**

Although prisoners retain the constitutional right to meaningful access to the courts, in order to state a valid claim concerning access to the courts, a prisoner must allege that the prison officials' deliberate and malicious interference resulted in actual injury. *Lewis v. Casey*, 518 U.S. 343, 349, 353 (1996). Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id*. at 354. Indeed, the United States Supreme Court in *Lewis v. Casey* stated,

> Finally, we must observe that the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all

> of the access-to-courts cases in the *Bounds* line involved
> attempts by inmates to pursue direct appeals from the
> convictions for which they were incarcerated ... or habeas
> petitions, we extended this universe of relevant claims only
> slightly, to 'civil rights actions' - i.e., actions under 42 U.S.C.
> § 1983 to vindicate 'basic constitutional rights.'

*Id*. (internal citations omitted).


Plaintiff's claims against defendants Nuttall, Corcoran and Washburn

concerning his mail at Southport relate in the first instance to incoming mail from the

Better Business Bureau and in the second instance, to alleged outgoing mail to

plaintiff's appellate attorney.  With respect to plaintiff's incoming mail, plaintiff alleges

that on or about November 30, 2005, plaintiff received notice from Southport's mailroom

staff that contraband had been received in the mail from the Better Business Bureau

and was being withheld because it was in excess of five pages.  Dkt. #1, p.23.  The

information plaintiff claimed to be receiving from the BBB was "in regards to the Small

Claims and Conciliation Branch procedures of the Superior Court of the District of

Columbia's website."  *Id*.  Moreover, plaintiff claimed in a December 12, 2005 letter to

defendant Washburn, "the urgent need for the information which was in excess of 5

pages, in the processing actions in the Superior Court of D.C."  *Id*.  Nothing in plaintiff's

complaint describes any injury plaintiff suffered as a result of defendants' alleged

conduct.  Moreover, as the Supreme Court held in *Lewis v. Casey,* "the injury

requirement is not satisfied by just any type of frustrated legal claim."  *Lewis v. Casey*,

518 U.S. 343, 354.  Thus, not only has plaintiff failed to allege an actual injury, but

plaintiff's assertion that the information sought from the BBB related to the Small

Claims and Conciliation Branch procedures of the Superior Court of D.C. seeks to extend the Constitutional right of access to the courts beyond a direct or collateral attack on a prisoner's sentence or a challenge to the conditions of a prisoner's confinement. Thus, it is recommended that that portion of defendants' motion to dismiss plaintiff's claim concerning his incoming mail at Southport be granted.

With respect to plaintiff's claim concerning outgoing mail to his "then-Criminal-Defense-Appellate-Attorney/office" and the alleged destruction of said mail, plaintiff again fails to allege any actual injury as a result of defendants' alleged conduct. Accordingly, it is recommended that that portion of plaintiff's claim against defendant Washburn concerning plaintiff's outgoing mail to his "then-Criminal-Defense-Appellate-Attorney/office" also be dismissed for failure to state a claim.

**Plaintiff's Claims Against Defendant Sheahan**

As against defendant Sheahan, plaintiff claims that defendant Sheahan was "made aware" of the paint fumes on "B-Block 1 Company" on or about January 18, 2006. However, plaintiff offers nothing to explain how defendant Sheahan was allegedly "made aware" of plaintiff's purported exposure to paint fumes beginning on or about January 17, 2006. Dkt. #1, p.26. In addition, plaintiff claims that defendant Sheahan had plaintiff placed in "D-Block's C Section 28 Cell ("D-C/28") at SHU." Dkt #1, p.27. Specifically, plaintiff claims that he remained at Progressive Inmate Movement System ("PIMS") level 1 for eight days beyond the thirty day requirement and

further that the PIMS level 2 privileges to which he claims to have been entitled, were withheld by defendant Sheahan. *Id*.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Here, plaintiff's allegations concerning his exposure to paint fumes and the fact that according to plaintiff defendant Sheahan was made aware of that fact is insufficient to allege defendant Sheahan's personal involvement in such an alleged Constitutional deprivation. Moreover, plaintiff's claims concerning PIMS level 1 and PIMS level 2 are vague and incomprehensible, and plaintiff's conclusory statement that he was treated differently that other inmates insufficient to state a claim against defendant Sheahan. Accordingly, this Court recommends that plaintiff's claims against

defendant Sheahan be dismissed without prejudice and that plaintiff be given thirty (30) days after the entry of a final order with respect to the instant motions to dismiss to file an amended complaint or face dismissal of his claims with prejudice.

**Retaliation**

   At the time plaintiff filed his opposition to defendants' motions to dismiss (Dkt. ##20 and 22), plaintiff was being housed at Southport.  In an affirmation filed in opposition to the motions to dismiss, plaintiff complains that he has suffered retaliation, including, "agents of the defendant's [sic] from Southport Correctional Facility have roughed the plaintiff up, threatened the plaintiff to withdraw from the action, directed racist statement at plaintiff, intimidation, degrading birth comments and name calling." Dkt. #20, p.1.   Plaintiff asks this Court to order that plaintiff be housed in "any other available single cell Special Housing Unit ("SHU")" other than Southport.  *Id*.  This Court lacks the authority to order that the defendant be imprisoned in any particular facility. *See United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995); *Fisher v. Goord*, 981 F.Supp. 140, 176 (W.D.N.Y. 1997); *United States v. Hollenbeck*, 932 F.Supp 53, 58 (N.D.N.Y. 1996).  The Court notes, however, that the plaintiff is currently being housed at the Elmira Correctional Facility.  Accordingly, it is recommended that plaintiff's request to be transferred from Southport for protection from retaliation be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:  Buffalo, New York
     March 11, 2010


          **s/ H. Kenneth Schroeder, Jr.**
          **H. KENNETH SCHROEDER, JR.**
          **United States Magistrate Judge**